IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMERICAN AUTOMOBILE INSURANCE
COMPANY,

   Plaintiff,

v.              1:13-cv-00439-MCA-LF

FIRST MERCURY INSURANCE COMPANY;
STANDARD E&S, LLC; ZIA TRANSPORT, INC.;
and BERGSTEIN ENTERPRISES, LTD.,

   Defendants.

### ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL FURTHER DEPOSITIONS OF NON-PARTY WITNESSES

   THIS MATTER comes before me on plaintiff American Automobile Insurance Company's ("AAIC") motion to compel further depositions of non-party witnesses Margaret Sutton and Stephen Eisenmann (Doc. 108), both of whom are current or former employees of defendant First Mercury Insurance Company whom AAIC previously deposed.  Counsel for First Mercury instructed Sutton and Eisenmann not to answer a number of questions based on the attorney-client privilege and/or the attorney work product doctrine.  First Mercury responded to the motion (Doc. 111), arguing that the instructions not to answer were based on valid claims of privilege and otherwise well-founded.  AAIC filed a reply (Doc. 122).

   Having reviewed the submissions of the parties, the relevant law, and being otherwise fully advised, I grant in part and deny in part AAIC's motion to compel and will allow AAIC to notice Sutton and Eisenmann for second depositions in accordance with this order.  I however decline to award AAIC attorney's fees and expenses under FED. R. CIV. P. 37(a)(5).

**BACKGROUND**

AAIC's motion to compel arises in the context of a bad faith dispute between insurers over an underlying case (the "Udy case") that proceeded in New Mexico state court. The Udy case resulted in a verdict of $58.5 million against several insured parties. During discovery in this case, AAIC deposed Sutton and Eisenmann—two non-party fact witnesses. Sutton is the former Vice President of Umbrella Claims at First Mercury's parent company, Crum & Forster. Doc. 108 at 2. Eisenmann is the former Senior Vice President of Claims at Crum & Forster. *Id.* During the depositions, counsel for First Mercury instructed both Sutton and Eisenmann not to answer questions regarding meetings and discussions about the Udy case because counsel may have been or was present at those meetings. *Id.*; Doc. 111 at 2. First Mercury asserted attorney-client privilege and/or attorney work product protections for discussions with or in the presence of Crum & Forster's then-general counsel, James Kraus, or outside counsel, Gena Sluga, hired by Crum & Forster after the $58.5 million jury-verdict was returned. Doc. 111 at 1–2.

AAIC now seeks to redepose Sutton and Eisenmann, asks the Court to compel answers to previously unanswered questions, reserves the right to ask additional questions into non-protected matters, and asks for costs and fees associated with bringing this motion and any subsequent depositions of either witness.

**DISCUSSION**

At the depositions of Sutton and Eisenmann, First Mercury instructed the deponents not to answer on the basis of both attorney-client privilege and attorney work product. Federal Rule of Civil Procedure 30(c)(2) provides that counsel "may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." When a deponent does not answer a question under Rule 30 or

Rule 31, the party seeking discovery may file a motion to compel an answer. FED. R. CIV. P. 37(a)(3)(B)(i).

AAIC seeks leave to subpoena both Sutton and Eisenmann for a second deposition. "The propriety of deposing someone a second time addresses the discretion of the court." *Cuthberston v. Excel Indus., Inc.*, 179 F.R.D. 599, 605 (D. Kan. 1998) (quotation omitted). Courts rarely grant leave for a second deposition and require the movant to show a good reason for such an allowance.

I note that AAIC continued the depositions of both witnesses without appearing to waste much time trying to resolve the objections. Additionally, AAIC conferred with First Mercury about the objections after the depositions and sought in good faith to resolve the disagreements. To the extent that I find that First Mercury improperly instructed the witnesses not to answer questions, AAIC has provided a good reason to allow a second deposition of each witness. AAIC will limit its examination of each witness to the previously objected-to matters and any reasonable extension thereof, will limit each deposition to three hours, and will—if possible—conduct video or phone depositions of each witness to limit costs.

I individually address each highlighted section of the deposition transcripts submitted by AAIC. For ease of ruling, I address claims of attorney-client privilege and attorney work product with respect to each question, but I address the depositions of Sutton and Eisenmann separately.

## I. Law Regarding the Attorney-Client Privilege

In a diversity case, state law governs the scope of the attorney-client privilege. *Anaya v. CBS Broad. Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007). The party asserting the privilege bears the burden of proving that the privilege applies and has not been waived. *Id.* at 650–51. In New

Mexico, a communication is protected by the attorney-client privilege if it is "(1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client." *Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 14, 143 N.M. 215, 221, 175 P.3d 309, 315 (citing NMRA Rule 11-503(B)). "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). "In order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client." *Id*. The party asserting privilege must show that each document or communication qualifies for privilege; there "is no blanket privilege covering all attorney-client communications." *Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 25, 143 N.M. at 224, 175 P.3d at 318 (quoting Douglas R. Richmond, *The Attorney-Client Privilege and Associated Confidentiality Concerns in the Post-*Enron *Era*, 110 PENN. ST. L. REV. 381, 386 (2005)). Courts must assess each claim of privilege individually. *Id.*

## II.     Law Regarding the Attorney Work Product Doctrine

The Supreme Court established the attorney work product doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947). In *Hickman*, the Court held that an attorney's notes of his interviews with witnesses to the sinking of a tugboat were protected from discovery. *Id.* at 509–10. The Court further held that an attorney's legal theories, strategies, opinions, and mental impressions are protected from discovery, absent a showing of substantial need. *See id.* at 510–14.

Federal Rule of Civil Procedure 26(b)(3) partially codified *Hickman. United States v. Deloitte LLP*, 610 F.3d 129, 135 (D.C. Cir. 2010). Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of

litigation or for trial by or for another party or its representative" unless the materials are otherwise discoverable and the party seeking the materials shows "substantial need." FED. R. CIV. P. 26(b)(3)(A). But even if a court orders discovery of such material, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B).

A party may instruct a deponent not to answer a question when necessary to protect against disclosure of an attorney's work product concerning the litigation. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995); Fed. R. Civ. P. 30(c)(2). As with the attorney-client privilege, the party asserting the protection bears the burden of demonstrating that it applies. *Dabney*, 73 F.3d at 266. "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." *Id.*

When a witness relies upon documents provided to the witness for review before testifying, Federal Rule of Evidence 612 requires that those documents be identified and produced, if they have not previously been provided to the other side. *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, 164 F.R.D. 250, 253 (D. Kan. 1996). The rule of evidence applies regardless of whether the documents provided to the witness are protected by the attorney-client privilege or attorney work product. *Id.*

### III. Ms. Sutton's Deposition

Doc. 108-1 at 6–8; Sutton Dep. 12:23–14:23. Counsel asked Sutton a series of questions about what documents, including deposition transcripts, she reviewed in advance of her deposition. First Mercury contends that this aspect of the motion to compel is moot because Sutton ultimately testified about the materials that she reviewed prior to her deposition. *See* Doc

111 at 19–21.  To the extent that she has not already done so, the Court will require Sutton to identify the documents she reviewed in anticipation of her deposition.

First Mercury relies on *Spork v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985) for the proposition that "documents selected by counsel for review by a defendant are protected as opinion work product."  Doc. 111 at 20.  But, as AAIC points out, courts within the Tenth Circuit have questioned whether this is so.  *See* Doc. 108 at 11 (citing *Christison v. Biogen Idec*, 2014 WL 3749191, *2 (D. Utah July 29, 2014) (unpublished) ("[T]his Court could not locate Tenth Circuit case law recognizing a work-product privilege for an attorney's compilation of select documents.  In fact, cases from district courts within the Tenth Circuit question such a privilege."); *Williams v. Sprint/United Mgmt. Co.*, 2007 WL 634873, at *4 (D. Kan. Feb. 27, 2007) (unpublished) (concluding "that mere selection and grouping of information does not transform discoverable documents into work product"); *Resolution Trust Corp. v. Heiserman*, 151 F.R.D. 367, 374 (D. Colo. 1993) (cautioning that "[t]aken to its logical conclusion," the claim that "selecting documents represents counsel's mental impressions and legal opinions" would "render[ ] virtually all document requests . . . opinion work-product . . . "); *Audiotext Commc'ns Network, Inc.*, 164 F.R.D. at 253 ("Collecting and organizing discoverable documents in a notebook does not make the notebook protected work product.")).  Moreover, Sutton testified that she used the documents provided to her to refresh her recollection in anticipation of testifying at her deposition.  *See* Doc. 108-1 at 8, 9; Sutton Dep. 14:22–23, 15:11–21.  Thus, to the extent First Mercury has not already done so, it must identify and produce the documents Sutton reviewed prior to her deposition under FED. R. EVID. 612.

Doc. 108-1 at 10; Sutton Dep. 52:7–19.  Counsel asked Sutton who, other than herself, Sluga had interviewed about the underlying claim.  First Mercury directed Sutton not to answer,

and defends that direction on the basis of attorney-client privilege and attorney work product. To the extent that this direction relies on privilege, AAIC did not ask Sutton what Sluga told her, but rather what she knows. Sutton could have come by this information through the normal course of business and not through communication "for the purpose of seeking professional legal services" that was "made privately and not intended for further disclosure." NMRA Rule 11-503(A)(4). To the extent that First Mercury relies on attorney-client privilege to prevent Sutton from answering this question, First Mercury failed to establish the privilege.

First Mercury also contends, however, that it properly directed Sutton not to identify the Crum & Forster employees Sluga interviewed on the basis of attorney work product. First Mercury relies on *DiDonna v. Vill. Farms Iga, LLC*, No. CV 12-1487(JS)(ARL), 2012 WL 3879149, at *1–*4 (E.D.N.Y. 2012) (unpublished), for the proposition that the identity of persons interviewed by counsel is protected as work product because it discloses the attorney's impressions and strategies. *See* Doc. 111 at 11–12. AAIC relies on *Sanchez v. Matta*, 229 F.R.D. 649, 659 (D.N.M. 2004) for the opposite proposition. *See* Doc. 108 at 7. There does not appear to be a Tenth Circuit case directly on point. The weight of authority, however, suggests that discovery that seeks the identity of persons with knowledge is permissible, whereas discovery that seeks the identity of persons whom counsel has interviewed is not. *See Massachusetts v. First Nat'l Supermarkets, Inc.*, 112 F.R.D. 149, 152 (D. Mass. 1986) ("when the terms of the interrogatory are not cast in terms of identification of persons with knowledge but rather in terms of the identification of persons interviewed by counsel, the work-product doctrine may be applicable"). Disclosure of the identities of witnesses interviewed "would inevitably teach [the requesting party] which individuals [opposing counsel] considered more or less valuable as witnesses and how [he or she] was preparing for trial." *United States v. District*

*Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, et al.*, No. 90 CIV. 5722 (CSH), 1992 WL 208284, at *10 (S.D.N.Y. Aug. 18, 1992) (unpublished) (citing *Appeal of Hughes,* 633 F.2d 282, 288–90 (3d Cir. 1980) (additional citations omitted)). Sutton need not answer this question because the information sought is protected by the attorney work product doctrine.

Doc. 108-1 at 11; Sutton Dep. 53:4–22. Counsel asked Sutton, as a "yes or no" question, if she knew whether Sluga developed "some writing" as a result of Sluga's work at Crum & Forster, if Sutton had reviewed those writings, and if anyone had ever told Sutton what conclusions Sluga reached as a result of her work. As to each question, Sutton was instructed not to answer. First Mercury defends this instruction both on the basis of attorney-client privilege and attorney work product.

I agree with AAIC that whether Sluga developed some writing as a result of her work at Crum & Forster, and whether Sutton knew about it, is not a "communication" subject to the attorney-client privilege. Additionally, whether Sutton reviewed any writings or reports written by Sluga is an action, not a "communication." Accordingly, First Mercury's claims of privilege are unsubstantiated and overruled.

First Mercury also contends that counsel's questions as to whether Sluga developed some writing as a result of her work for Crum & Forster and whether Sutton reviewed that writing invades the work product protections. I disagree. The existence of writings and whether Sutton reviewed them are not protected by the work product doctrine, even if First Mercury would not be required to disclose the writings themselves or their content. Sutton is directed to answer these questions.

As to whether anyone ever told Sutton what conclusions Sluga reached, this reaches into the realm of attorney-client privilege. Sluga's conclusions were part of her work as outside counsel for Crum & Forster and could only have been communicated to Sutton—directly or indirectly—for the purpose of providing legal advice. The instruction not to answer was proper, and Sutton need not answer this question.

Doc. 108-1 at 13; Sutton Dep. 56:5–9. Counsel asked Sutton about the business purpose of her meeting with Sluga, and Sutton was directed not to answer. First Mercury argues that AAIC knows Sluga was hired as outside counsel to Crum & Forster to perform an after-verdict review of the underlying claim, and that any additional inquiry about the purpose of the meeting invades the attorney-client privilege. I agree. AAIC is entitled to know the general purpose—to facilitate Sluga's after-verdict review, but any further information would veer into protected communication. Sutton need not answer this question.

Doc. 108-1 at 14; Sutton Dep. 76:4–11. Counsel asked Sutton whether the pre-verdict standard operating procedure of Crum & Forster's "large loss committee" also applied to the committee's post-verdict work. First Mercury instructed Sutton not to answer on the basis of attorney-client privilege because Kraus was present at the large loss committee meetings and provided legal advice. But whether the committee continued to follow the standard operating procedure is an action, not a communication with counsel for the purpose of receiving legal advice. Accordingly, the attorney-client privilege does not apply. Sutton is directed to answer the question.

Doc. 108-1 at 14; Sutton Dep. 76:20–25. Counsel asked Sutton if she knew whether the large loss committee reviewed any writings or written materials during its post-verdict work. Sutton was instructed not to answer on the basis of privilege. This appears to be a yes or no

question asking about what the large loss committee did, not the content of the communications. Again, what the committee did is not protected by privilege. Sutton is directed to answer. I note that privilege may apply to the materials themselves and/or their contents.

First Mercury also argues that this information is protected by the work product doctrine. I disagree. While the content of the documents may be protected by the work product doctrine, the fact of their existence is not. Sutton is directed to answer this question.

Doc. 108-1 at 15; Sutton Dep. 77:2–14. Counsel asked Sutton a series of questions about the large loss committee's post-verdict meeting, beginning with who made presentations, if Sutton spoke, and if others spoke during the meeting. She was instructed not to answer on the basis of attorney-client privilege. First Mercury maintains that the committee's post-verdict meeting "was held for the purpose of obtaining legal advice from Mr. Kraus," rendering its activities protected by privilege and the work product doctrine. Doc. 111 at 14. The identity of who made presentations and who spoke, however, is not a communication, and therefore is not protected by the attorney-client privilege. Sutton is instructed to answer all three questions. I note, however, that privilege may apply to the substance of these presentations or remarks.

First Mercury also contends that answering these questions invades the attorney work product protections. Again, the identity of who made presentations and who spoke does not disclose the mental impressions and legal theories of First Mercury's lawyers and is not protected by the work product doctrine. However, the attorney-client privilege and/or the work product doctrine likely protect the substance of the presentations and the remarks themselves. Thus, Sutton must answer these questions but need not answer questions related to the substance of the presentations or remarks.

Doc. 108-1 at 16; Sutton Dep. 78:3–15.  Counsel asked Sutton what the large loss committee did in connection with the underlying claim, post-verdict, and whether Crum & Forster took any action at the direction of the committee.  Sutton again was instructed not to answer on the basis of privilege.  First Mercury contends that what Crum & Forster did as a result of obtaining legal advice is protected by privilege.  Doc. 111 at 9.  First Mercury cites no authority for the proposition that an entity's actions after obtaining legal advice are protected by privilege.  Indeed, such a result would be nonsensical: every person or company could protect its actions by talking with a lawyer about it beforehand.  First Mercury improperly instructed Sutton not to answer these questions.  I again note that privilege may apply to other questions resulting from these answers.

First Mercury also argues that the information sought by these questions is protected by the attorney work product doctrine.  Doc. 111 at 13.  These questions, however, do not seek the opinions or mental impressions of counsel.  They only ask what actions the large loss committee and the company took.  Accordingly, the work product doctrine does not apply.  Sutton must answer these questions.

Doc. 108-1 at 17–18; Sutton Dep. 90:21–91:12.  Sutton was instructed not to answer two questions:  first, whether she remembered discussing information she learned from her post-verdict review of the underlying claim at the large loss committee meeting; and second, who presented information about the underlying claim to the committee.  As to the first question, Sutton later made clear that the large loss committee meeting was on the same day as the verdict, and therefore her post-verdict review came after the meeting.  Accordingly, this question is moot because Sutton could not have discussed what she learned from her review before she did the review.  As to the second question—the identity of the person who presented information about

the underlying claim on the same day that the verdict came out—is not a communication. Sutton will answer this question.

Doc. 108-1 at 20; Sutton Dep. 174:13–17. Counsel asked Sutton if she talked to anyone in the large loss committee about what had or had not been disclosed about the underlying claim. First Mercury objected on the basis of privilege. Under the circumstances, I agree that this seeks privileged material. The large loss committee met after receiving a substantial adverse verdict and must have known that a bad faith claim—like the one in this case—was probable. Discussions of what was or was not disclosed during claims handling goes directly to bad faith and was likely communicated for the purpose of receiving legal advice. Sutton need not answer this question.

Doc. 108-1 at 21–22; Sutton Dep. 181:7–182:11. Counsel asked Sutton why an omission she found in an email, discovered during her file review, would be important to the large loss committee, and if she remembered discussing the omission with the committee. Sutton was instructed not to answer both questions on the basis of privilege. Why an omission would be important does not fall within the scope of the attorney-client privilege because it does not address a communication. In her position at Crum & Forster, Sutton would know why an omission matters. Sutton is directed to answer this question.

Whether Sutton discussed the omission with the committee, including Kraus, is a different matter. If she did discuss the omission with the committee, it was for the purpose of seeking legal advice and falls within the attorney-client privilege. Sutton need not answer this question.

Doc. 108-1 at 23–24; Sutton Dep. 219:12–220:9. Counsel asked Sutton what she understood she was supposed to do with deposition excerpts provided to her by First Mercury

before her deposition, and if she read those excerpts for the purpose of testifying consistently with previous deponents. First Mercury objected on the basis of privilege and because the questions were argumentative. First Mercury suggests, without explicitly stating, that Keleher & McLeod represents Sutton—at least for the purposes of the deposition—even though Sutton no longer works for First Mercury's parent company, Crum & Forster. *See* Doc. 111 at 22. AAIC does not contest this characterization. Thus, to the extent Sutton's understanding of what she was supposed to do with the deposition excerpts was based on her communications with Mr. Reid or another attorney at Keleher & McLeod, Sutton need not answer this question.

### IV. Mr. Eisenmann's Deposition

Doc. 108-2 at 6–7; Eisenmann Dep. 50:10-51:22. Counsel asked Eisenmann if he recalled reviewing documents or writings as part of the large loss committee meeting, if he spoke with Sutton before the meeting for the purpose of his attendance at the meeting, if he spoke with anyone concerning the underlying claim before the meeting, if he took notes during the meeting, if he observed others taking notes during the meeting, if he was asked to do anything as a result of the meeting, if he took any action with respect to the underlying claim as a result of the meeting, and what those actions were. As to each question, Eisenmann was instructed not to answer.

With the exception of the last question, these appear to be yes or no questions asking about what people did, not what they said or otherwise communicated. The last question is also about what Eisenmann did. The fact that Eisenmann may have acted on the advice of counsel is not, in itself, privileged. What people did is not protected by privilege.

First Mercury also contends that the information sought by these questions is protected by the attorney work product doctrine. Although the documents and notes themselves and their

content may be protected by the work product doctrine, the fact of their existence is not. The work product doctrine also does not protect what Eisenmann did or observed. Eisenmann is directed to answer these questions.

 Doc. 108-2 at 8–9; Eisenmann Dep. 52:24–53:22. Counsel asked Eisenmann about the purpose of his meeting with Sluga and what work Sluga was doing for Crum & Forster, and Eisenmann was directed not to answer. First Mercury argues that AAIC knows Sluga was hired as outside counsel to Crum & Forster to perform an after-verdict review of the underlying claim, and that any additional inquiry about the purpose of the meeting invades the attorney-client privilege. I agree. AAIC is entitled to know the general purpose—to facilitate Sluga's after-verdict review—but any further information would veer into protected communications. Eisenmann need not answer these questions.

 First Mercury also objected to Eisenmann answering these questions based on the attorney work product doctrine. I agree that the work product doctrine protects any additional inquiry into what Sluga did for Crum & Forster beyond the general purpose of her work.

 Doc. 108-2 at 10–11; Eisenmann Dep. 54:25–55:14. Counsel asked Eisenmann, as a "yes or no" question, if he reviewed any written materials during his meeting with Sluga, if he ever learned the result of Sluga's work on the matter, and if he knew whether Sluga generated any written materials as a result of her work for Crum & Forster. As to each question, Eisenmann was instructed not to answer. First Mercury defends this instruction both on the basis of privilege and on the basis of work product.

 As explained above, I agree with AAIC that whether Sluga developed some writing as a result of her work at Crum & Forster, and whether Eisenmann knew about it, is not a "communication" subject to the attorney-client privilege. Additionally, whether Eisenmann

reviewed any written materials during his meeting with Sluga is not a "communication." Accordingly, First Mercury's claims of attorney-client privilege are unsubstantiated and overruled.

First Mercury also contends that whether Eisenmann reviewed any written materials during his meeting with Sluga and whether he knows if Sluga generated any written materials as a result of her work for Crum & Forster is protected by the work product doctrine. First Mercury is incorrect. While work product may protect against the production of such materials or disclosure of their contents, it does not prohibit Eisenmann from answering whether he reviewed materials or knows if Sluga created written materials. Eisenmann is instructed to answer these questions.

As to whether Eisenmann ever learned what conclusions Sluga reached, this reaches into the realm of attorney-client privilege. Sluga's conclusions were part of her work as outside counsel for Crum & Forster and could only have been communicated to Eisenmann—directly or indirectly—for the purpose of providing legal advice. This instruction was proper and Eisenmann need not answer this question.

Doc. 108-2 at 12–13; Eisenmann Dep. 61:16–62:2. Counsel asked Eisenmann if he ever considered whether any adverse employment consequences should flow from the handling of the underlying claim. He said "not outside the presence of counsel," and was then instructed not to answer whether he discussed the matter with counsel. Whether Eisenmann ever considered the matter is not subject to the attorney-client privilege as it seeks Eisenmann's thoughts, but whether and to what extent he discussed the matter with counsel falls within the privilege. Eisenmann need only answer this question with respect to his own thoughts, but not with respect to any discussions he had with counsel.

Doc. 108-2 at 13; Eisenmann Dep. 62:10–23. Counsel asked Eisenmann if he was involved in any decision to change the personnel handling the underlying claim and post-verdict litigation. After conferring with counsel, Eisenmann was instructed not to answer. First Mercury now asserts that this is subject to the attorney-client privilege. But First Mercury makes no statement or argument suggesting that whether Eisenmann was involved in any such decision constituted a communication with counsel. First Mercury has failed to establish the elements of privilege. Eisenmann is instructed to answer this question.

Doc. 108-2 at 14; Eisenmann Dep. 72:12–22. Counsel asked Eisenmann if he knew whether anyone at Crum & Forster assessed whether the claims handling process of the underlying claim complied with Crum & Forster's expectations. First Mercury instructed Eisenmann to exclude conversations with general counsel, but to answer. Eisenmann then said that there were no discussions outside the presence of counsel. While the content of those discussions may be privileged, whether Eisenmann knew if someone made such an assessment is not. Eisenmann will answer the question. I again note that questions flowing from this answer may be subject to a valid assertion of privilege.

Doc. 108-2 at 15–17; Eisenmann Dep. 81:14–83:9. Counsel asked Eisenmann if, after reviewing deposition excerpts provided to him in advance of his own deposition, he viewed any of the prior testimony as being inaccurate. Eisenmann answered that everything he learned about the handling of the underlying claims was after the verdict and through discussions with counsel. Thus, his opinion on the accuracy of the prior deposition testimony was entirely a result of his communications with counsel. Eisenmann need not answer this question.

Doc. 108-2 at 18–19; Eisenmann Dep. 85:4–86:14. Counsel asked Eisenmann if he recalled any discussions about the performance of the adjustors in the presence of counsel, if he

had an opinion about the performance of the adjustors, if anyone had ever told him that the adjustors' performance was unsatisfactory, if he ever expressed the opinion that the adjustors' performance was unsatisfactory, and if he had an opinion about whether the claims handling team's performance was satisfactory. First Mercury objected to the first two questions and instructed Eisenmann not to answer, purportedly based on privilege, and instructed Eisenmann to answer the remaining questions only to the extent that such discussions occurred outside the presence of counsel.

First Mercury's objection to the first question is well-founded: the question clearly addresses conversations in the presence of counsel, presumably for the purpose of receiving legal advice. Accordingly, Eisenmann need not answer this question.

As to questions asking for Eisenmann's opinions, these questions address Eisenmann's thoughts, not communications with counsel. The privilege does not apply to an individual's opinions. Accordingly, Eisenmann is directed to answer these questions.

Finally, as to whether anyone ever told Eisenmann that the adjustor's performance was unsatisfactory and whether he ever expressed that opinion, Eisenmann stated that he could not answer the question because any such conversations occurred in the presence of counsel. Given the nature of these conversations, it is likely that they occurred for the purpose of receiving legal advice. The privilege therefore applies, and Eisenmann need not answer these questions.

Doc. 108-2 at 20–22; Eisenmann Dep. 98:23–100:8. Counsel asked Eisenmann what he was told about Eric Weiss hiding documents from his supervisor relating to the underlying claim and what he was told about Weiss failing to properly document the underlying claims file. First Mercury objected on the basis of attorney-client privilege.

First Mercury argues that these questions ask for information Kraus or Sluga communicated to Eisenmann in post-verdict meetings for the purpose of obtaining or receiving legal advice.  Under the circumstances, I find that First Mercury met its burden of establishing that what Eisenmann was told about Weiss's handling of the file occurred in the presence of counsel and for the purpose of obtaining legal advice.  It therefore is protected by the attorney-client privilege.  Eisenmann need not answer these questions.

Doc. 108-2 at 23; Eisenmann Dep. 114:16–23.  Counsel asked Eisenmann if he recalled discussing the underlying claim, post-verdict, with a Mr. Trezise, and what he discussed with Mr. Trezise.  Eisenmann answered that he did not discuss the claim with Mr. Trezise outside the presence of counsel, and was directed not to answer the second question.

AAIC does not address this section of testimony in its motion to compel.  Accordingly, any argument by AAIC on this matter is deemed waived.  Eisenmann need not answer this question.

## SANCTIONS

AAIC requests expenses, including attorney's fees, as appropriate under Rule 37(a)(5)(A).  Rule 37(a)(5)(A) states that, when a motion to compel has been filed and granted, or the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  FED. R. CIV. P. 37(a)(5)(A).  Such an order would be inappropriate if the movant failed to attempt to obtain disclosure without court action, the nondisclosure was substantially justified, or other circumstances exist making an award unjust.  *Id.*

I have granted in part and denied in part AAIC's motion to compel. The parties agree that AAIC attempted to obtain disclosure and attempted to confer in good faith with defense counsel before filing this motion to compel. First Mercury contends that its instructions that Sutton and Eisenmann not answer questions on the basis of attorney-client privilege or the work product doctrine were substantially justified, making an award of expenses unjust. Because I find that several of the instructions not to answer were justified, I decline to order sanctions.

## CONCLUSION

For the reasons explained above, I have granted in part and denied in part AAIC's motion to compel answers to deposition questions. AAIC may take second depositions of both Margaret Sutton and Stephen Eisenmann, each limited to three hours and to the scope outlined in this order. Further, AAIC will attempt to take the depositions by remote means, or will find another cost-effective alternative. I deny AAIC's request for sanctions.

IT IS SO ORDERED.

_____
Laura Fashing
United States Magistrate Judge