IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AMERICAN AUTOMOBILE INSURANCE
COMPANY,

        Plaintiff/Counterdefendant,

v.                                  No. 13:CV-439 MCA/LF

FIRST MERCURY INSURANCE COMPANY;

        Defendant/Counterclaimant

and

XL INSURANCE COMPANY LIMITED and
HCC INTERNATIONAL INSURANCE COMPANY PLC,

        Joined Plaintiffs on Counterclaim.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on American Automobile Insurance Company's (AAIC's) *Opposed Motion for Leave to File its Motion for Judgment on the Pleadings as to First Mercury's Counterclaim or for Partial Summary Judgment as to First Mercury's Counterclaim* [Doc. 151]. The Court has considered the parties' submissions and the relevant law, and is otherwise fully informed. For the following reasons, the Court **GRANTS** AAIC's *Motion*.

### I.    Background

The details of the underlying action and insurance policies at issue are described more fully in this Court's order on the parties' cross motions for summary judgment filed

March 31, 2017. [Doc. 162] In March, 2010, Kevin Udy was killed in an accident in which his pickup truck collided with a trailer being hauled by a tractor driven by Monte Lyons. Lyons was an employee of Standard E & S, LLC (Standard) and the tractor and trailer were owned by Zia Transport, Inc. (Zia). A year later, the personal representative of Udy's estate, along with Udy's wife and eight children, filed a wrongful death action against Lyons, Standard, and Zia (the Udy Action). The plaintiffs also named Bergstein Enterprises, Ltd (Bergstein), the management company for Standard and Zia, as a defendant in the Udy Action. [Doc. 117-1 (*Udy Action Complaint*)]

Three insurance policies are at issue. Two were issued by AAIC and one was issued by First Mercury. First, the AAIC Standard Policy had a limit of $1 million and covered Standard as a named insured. Second, the First Mercury Policy was an excess policy and had a limit of $4 million. The AAIC Standard Policy was named as "underlying insurance" to the First Mercury Standard Policy. Third, the AAIC Bergstein Policy had a limit of $1 million and covered Bergstein as a named insured.

Although the parties disagree as to whether AAIC properly tendered the policy limits on the AAIC Standard Policy to First Mercury, they agree that First Mercury took the lead in settlement negotiations with the Udy plaintiffs. [Doc. 116, ¶¶ 18-19, 21 (asserting that AAIC tendered its limits on the AAIC Standard Policy to First Mercury and that First Mercury "took control" of the negotiations); Doc. 131, ¶¶ 18-21 (disputing that AAIC properly tendered its limits but agreeing that First Mercury "took over the primary role" in negotiations); Doc. 116-2, Exh. H & I, pgs. 25-27] During the negotiations, First Mercury offered the Udy plaintiffs the $1 million available under the

AAIC Standard Policy, but did not offer the entire $4 million available under the First Mercury Standard Policy.  [Doc. 116, ¶ 27; Doc. 131, ¶ 27; Doc. 116-2, Exh. J, pg. 29; Doc. 116-6, Exh. 133, pg. 20]  No funds from the AAIC Bergstein Policy were offered during negotiations.  [Doc. 131, pg. 11, ¶ Y (stating that AAIC offered the Bergstein Policy limit after the verdict); Doc. 138, pg. 6, ¶ Y (not disputing this assertion); Doc. 131-9]

After a jury trial, judgment was entered against Standard, Zia, and Bergstein for a total of $58 million, including $30,300,000 against Standard and $22,050,000 against Bergstein.  [Doc. 116, ¶ 29; Doc. 131, ¶ 29; Doc. 116-3, Exhs. 1-2]  The case was then settled for $43 million, which was paid as follows:  $1 million by AAIC pursuant to the AAIC Standard Policy; $4 million by First Mercury pursuant to the First Mercury Standard Policy; $1 million by AAIC pursuant to the AAIC Bergstein Policy; $4 million by Commerce and Industry pursuant to an excess policy to the AAIC Bergstein Policy, which is not at issue here; and $33 million by First Mercury and its liability insurers. [Doc. 116, ¶ 30 (asserting these facts); Doc. 131, ¶ 30 (not disputing these facts)]

AAIC filed a *Complaint for Declaratory Judgment, Bad Faith, and Equitable Subrogation* against First Mercury, Standard, Zia, Bergstein, and the Udy plaintiffs. [Doc. 1]  The *Complaint* alleged that First Mercury breached its duty of good faith and fair dealing by failing to settle with the Udy plaintiffs within policy limits, and that AAIC is entitled to equitable subrogation and declaratory relief.  [Doc. 4]  In its suit, AAIC seeks $1 million, which represents the amount of the AAIC Bergstein Policy that AAIC paid as a result of First Mercury's failure to settle the Udy Action within the limits of the

AAIC Standard Policy and the First Mercury Standard Policy.  [Doc. 4, ¶¶ 30-32]  In the *First Amended Complaint for Declaratory Judgment, Bad Faith, and Equitable Subrogation (First Amended Complaint)*, AAIC dismissed the Udy plaintiffs, leaving First Mercury, Standard, Zia, and Bergstein as defendants.  [Doc. 4]  Standard, Zia, and Bergstein were then dismissed from the suit for failure to state a claim.  [Doc. 33]

First Mercury answered the *First Amended Complaint* and counterclaimed against AAIC, alleging that AAIC acted in bad faith by, *inter alia*, failing to notify First Mercury of the AAIC Bergstein Policy.  [Doc. 13]  First Mercury maintains that, if AAIC had disclosed the AAIC Bergstein Policy earlier in the negotiations, "the Udy Action likely would have settled prior to trial within policy limits."  [Doc. 13, ¶ 25]  First Mercury seeks equitable and punitive damages.  [Doc. 13, ¶¶ 28, 32]  XL Insurance Company Limited and HCC International Insurance Company PLC joined as plaintiffs on the counterclaim.  [Doc. 143]

The Court entered a scheduling order pursuant to Federal Rule of Civil Procedure 16 on November 17, 2014.  [Doc. 40]  Through successive stipulated orders, the deadlines for dispositive motions and discovery were extended several times.  [Docs. 51, 66, 72, 79, 88]  The current deadline for dispositive motions was July 1, 2016.  [Doc. 88]

AAIC moved for leave to file a motion for judgment on the pleadings as to First Mercury's counterclaims on October 31, 2016, and filed its proposed *Motion for Judgment on the Pleadings as to First Mercury's Counterclaim or for Partial Summary Judgment as to First Mercury's Counterclaim* as an exhibit to its *Motion for Leave to File its Motion for Judgment on the Pleadings*.  [Doc. 151]  First Mercury responded in

opposition to the *Motion for Leave to File*, [Doc. 153] but, appropriately, has not yet responded to the *Motion for Judgment on the Pleadings*.

## II.    Discussion

The present *Motion* implicates two rules of civil procedure:  Rule 12(c) and Rule 16.  Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Federal Rule of Civil Procedure 16(b)(3)(A) governs scheduling orders, which "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions."   The parties dispute whether a deadline set pursuant to Rule 16 governs the timing of Rule 12(c) motions.  [Doc. 153, pg. 4; Doc. 155, pg. 2]  *See Hughes v. Z, Inc.*, No. CIV.04-980-C, 2006 WL 290576, at *1–2 (W.D. Okla. Feb. 6, 2006) (stating that "[t]he broader language of Rule 12(c), however, appears to conflict with Rule 16" and that "[t]he Tenth Circuit has not directly addressed this apparent conflict," but relying on *Riggins v. Walter,* 279 F.3d 422, 427-28 (7th Cir.1995), to hold that "Rule 12(c) does not restrict the court's discretion under Rule 16(b).  . . . [A] Rule 12(c) motion may be brought after the dispositive motions deadline if the moving party complies with the requirements of Rule 16(b) *and* if it will not delay trial." (internal quotation marks and citation omitted)); *Argo v. Woods*, 399 F. App'x 1, 2–3 (5th Cir. 2010) (same); *but see Liburd v. Gov't of Virgin Islands*, No. CIVILACTION2011020, 2013 WL 960780, at *3– 4 (D.V.I. Mar. 13, 2013) (noting cases stating that 12(c) motions may be filed "at any time before trial").  The Court concludes, however, that, even if the Rule 16 dispositive motions deadline applies here, AAIC's *Motion* should be granted.

Rule 16(b) states that "[a] schedule [set out in a scheduling order] may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518 (10th Cir. 1990) ("Scheduling orders are not to be modified by the trial court except when authorized by local rule upon a showing of good cause."); D.N.M.LR-Civ. 16.1 ("Modification of deadlines in the Court's scheduling orders and trial notices, whether or not opposed, requires a showing of good cause and Court approval.").

> The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.  Thus, . . . the Court may grant leave to modify the pretrial schedule and amend the complaint under Rule 16(b) only if the schedule cannot reasonably be met despite the diligence of the party seeking the extension.  Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Rowen v. New Mexico*, 210 F.R.D. 250, 252 (D.N.M. 2002) (internal quotation marks and citation omitted).

Other factors may also be considered.  For instance, "'good cause' exists for extending a dispositive motion deadline where the proffered dispositive motion presents *legal* issues that the court would inevitably have to decide either prior to or in the course of trial."  *Eischeid v. Dover Const., Inc.*, 217 F.R.D. 448, 455 (N.D. Iowa 2003).  "In those circumstances, a well-founded . . . motion might present the most efficient method for addressing the legal issues presented, the fairest opportunity for all parties to be heard on those issues, and, ultimately, make possible a smoother, more coherent, and briefer presentation of the case to a jury."  *Id.*  Moreover, consideration of a late motion poses no prejudice to the opposing party where "the issues raised in the belated motion must

inevitably be addressed by the court either prior to or in the course of trial." *Id.*; *see also Harvey v. THI of New Mexico at Albuquerque Care Ctr., LLC*, No. 12-CV-727 MCA/LAM, 2015 WL 12670522, at *3 (D.N.M. Mar. 31, 2015) (considering other factors in determining whether to permit a Rule 12(b)(6) motion filed after the dispositive motions deadline).

Here, AAIC's proposed *Motion for Judgment on the Pleadings* seeks dismissal of First Mercury's counterclaim for failure to state a claim. [Doc. 151, Exh. 1] In First Mercury's counterclaim, First Mercury seeks relief representing the amount it paid on behalf of AAIC's insureds, including Standard and Zia, in the Udy Action. [Doc. 13] That amount includes punitive damages. AAIC argues that First Mercury has failed to state a claim because 1) First Mercury cannot seek indemnification for punitive damages against Standard and Zia as a matter of law; and 2) neither Standard nor Zia were insureds under the AAIC Bergstein Policy and, consequently, they had no rights under that policy to assign to First Mercury. [Doc. 151, Exh. 1]

Although First Mercury argues that "AAIC's proposed motion for judgment on the counterclaim raises fact issues that will be addressed at trial," [Doc. 153] it does not identify any facts that must be developed to resolve AAIC's essentially legal arguments. *See W. Heritage Bank v. Fed. Ins. Co.*, 557 F. App'x 807, 812 (10th Cir. 2014) (stating that under New Mexico law, "the interpretation of terms within an insurance policy is a matter of law about which the court has the final word." (internal quotation marks and citation omitted). Moreover, because AAIC's *Motion for Judgment on the Pleadings* is essentially a Rule 12(b)(6) motion, its purpose is to test the legal sufficiency of the

counterclaim. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Estate of Stevens ex rel. Collins v. Bd. of Comm'rs of Cty. of San Juan*, 53 F. Supp. 3d 1368, 1372 (D.N.M. 2014) (stating that "a defense of failure to state a claim may be raised through [a motion for judgment on the pleadings]" and that "[s]uch motions are functionally equivalent to motions to dismiss and are reviewed under the same standards."). Consistent with the review of Rule 12(b)(6) motions, in considering the *Motion for Judgment on the Pleadings*, the Court will "accept as true all well-pleaded factual allegations in [the counterclaim] and view these allegations in the light most favorable to [First Mercury]." *Smith*, 561 F.2d at 1098. Thus, no factual development is necessary. *Id.* ("The legal sufficiency of a complaint is a question of law.").

Finally, First Mercury does not identify any way in which it will be prejudiced by the Court's consideration of AAIC's *Motion for Judgment on the Pleadings*. Trial has yet to be set. Thus, considering the motion will not delay or disrupt trial or the orderly administration of the case. Finally, First Mercury does not argue that AAIC has acted in bad faith or with intent to delay resolution of this matter, and the Court sees no evidence that AAIC has done so. Thus, exercising its discretion, the Court will grant AAIC's *Opposed Motion for Leave to File its Motion for Judgment on the Pleadings as to First Mercury's Counterclaim or for Partial Summary Judgment as to First Mercury's Counterclaim* [Doc. 151].

**III.    Conclusion**

For the foregoing reasons, the Court **GRANTS** *AAIC's Opposed Motion for Leave to File its Motion for Judgment on the Pleadings as to First Mercury's Counterclaim or for Partial Summary Judgment as to First Mercury's Counterclaim* [Doc. 151].

**SO ORDERED this 17th day of July, 2017.**

**M. CHRISTINA ARMIJO**
**Chief United States District Judge**