IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMERICAN AUTOMOBILE INSURANCE
COMPANY,

    Plaintiff/Counterdefendant,

v.                                                            Civ. No. 13-439 KG/LF

FIRST MERCURY INSURANCE COMPANY,

    Defendant/Counterclaimant,

and

XL INSURANCE COMPANY LIMITED and
HCC INTERNATIONAL INSURANCE COMPANY PLC,

    Joined Plaintiffs on Counterclaim.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon "American Automobile Insurance Company's Opposed Motion for Judgment on the Pleadings as to First Mercury's Counterclaim or for Partial Summary Judgment as to First Mercury's Counterclaim" (Motion), filed July 28, 2017. (Doc. 175). Plaintiff/Counterdefendant American Automobile Insurance Company's (AAIC) has presented evidence outside the pleadings. Therefore, the Court will analyze the Motion as a motion for partial summary judgment. *See SEC v. Wolfson,* 539 F.3d 1249, 1264 (10th Cir.2008) (stating "when a motion for judgment on the pleadings is filed and 'matters outside the pleadings are presented to and not excluded by the court, the motion *must* be treated as one for summary judgment and disposed of as provided in Rule 56'" (quoting Fed. R. Civ. P. 12(d))). Defendant/Counterclaimant First Mercury Insurance Company (First Mercury) and Joined Plaintiffs on Counterclaim, XL Insurance Company Limited and HCC International Insurance

Company, PLC, (collectively, Counterclaimants) filed a response on August 24, 2017, and AAIC filed a reply on September 25, 2017. (Docs. 177 and 178). Having reviewed the Motion, the relevant evidence, and the briefing, the Court grants the Motion, in part, as described below.

A. Background

    1. *Summary of the Facts[1]*

This case involves an insurance dispute arising from a traffic accident in which Monte Lyons, a Standard E&S, LLC (Standard) truck driver, caused the death of Kevin Udy. (Doc. 162) at 2. Lyons was driving a truck and trailer leased to Standard from Zia Transport, Inc. (Zia). *Id.* Bergstein Enterprises, Ltd. (Bergstein) operated both Standard and Zia. *Id.*

        a. *The Insurance Policies*

Standard had an AAIC insurance policy (Standard Policy) which included Lyons, Zia, and Bergstein as additional insureds under its omnibus clause. (Doc. 4) at ¶ 7. That insurance policy had "primary liability coverage up to $1 million" per accident. (Doc. 162) at 3. This policy also covered punitive damages.[2] In addition to the Standard Policy, Standard had an excess insurance policy issued by First Mercury with a limit of $4 million (Standard Excess Policy). *Id.* at 5. The Standard Policy served as the underlying policy for the Standard Excess Policy. *Id.*

Furthermore, AAIC issued Bergstein an insurance policy with a $1 million limit. *Id.* Because the tractor and trailer driven by Lyons was not listed on the Bergstein Policy, the policy apparently covers the tractor and trailer as only excess insurance. *Id.*

        b. *The Underlying State Lawsuit*

---

[1] Unless otherwise noted, this Summary of the Facts is undisputed.

[2] Counterclaimants contend that the Standard "policy did not contain a punitive damages exclusion." (Doc. 177) at 5. AAIC does not contest that contention. *See* (Doc. 178) at 5.

2

In March 2011, the Estate of Kevin Udy and Udy family members (collectively, the Udys) sued Standard, Zia, Bergstein, and Lyons in state court for wrongful death, loss of consortium, personal injury, and punitive damages. (Doc. 117-1). AAIC provided a defense to all four defendants in that case while "First Mercury took the lead in settlement negotiations with the Udy plaintiffs." (Doc. 4) at ¶ 15; (Doc. 162) at 6. In doing so, First Mercury offered $2,250,000 to settle the case. (Doc. 116-3) at 22. First Mercury specifically offered the $1 million limit under the AAIC Standard Policy and then, presumably, offered $1,250,000 under its Standard Excess Policy. (Doc. 162) at 6. No funds from the Bergstein Policy were offered during the pretrial settlement negotiations. *Id.* In fact, First Mercury contends that it did not know about the Bergstein Policy at that time. (Doc. 13) at 9, ¶ 18.

The Udys countered by offering to settle the case for $3.5 million, well within the limits of the Standard Policy and the Standard Excess Policy. (Doc. 116-3) at 20-23. First Mercury apparently did not respond to that counteroffer, so the Udys withdrew the counteroffer and terminated settlement negotiations. *Id.* at 22-23.

In March 2013, a jury trial tried the state case and "judgment was entered against Standard, Zia, and Bergstein for a total of $58 million…." (Doc. 162) at 7. Relevant to this Motion, the jury awarded $2.3 million in compensatory damages against Standard and $28 million against Standard in punitive damages. (Doc. 175-2) at 6-8. The jury also awarded $1,035,000 in compensatory damages against Zia and $5 million against Zia in punitive damages. *Id.*

The case subsequently settled for $43 million, which was paid as follows: $1 million under the Standard Policy; $4 million under the Standard Excess Policy; $1 million under the

Bergstein Policy; $4 million under an excess policy to the Bergstein Policy, which is not at issue here; and $33 million by First Mercury and its liability insurers. (Doc. 162) at 7.

### c. Post-Settlement Actions

On May 9, 2013, AAIC sent a letter to the Udy defendants reserving its rights under the Standard Policy and the Bergstein Policy while it pursues relief in federal court. (Doc. 4-6). That same day, AAIC filed this lawsuit against First Mercury, Standard, Zia, Bergstein, Lyons, and the Udy plaintiffs for declaratory judgment, bad faith, and equitable subrogation. (Doc. 1). AAIC then amended the complaint in July 2013 to bring its claims against only First Mercury, Standard, Zia, and Bergstein. (Doc. 4). The Court since has dismissed the claims against Standard, Zia, and Bergstein, leaving First Mercury as the remaining Defendant. (Doc. 33).

In October 2013 First Mercury filed counterclaims against AAIC. (Doc. 13) at 10-11. The Court subsequently allowed XL Insurance Company Limited and HCC International Insurance Company PLC to join as plaintiffs on First Mercury's counterclaims. (Doc. 143).

In February 2014 Standard, Zia, Bergstein, and Pieter Bergstein[3] (collectively, Bergstein entities) entered into an Indemnification Agreement, Assignment and Release with First Mercury. (Doc. 175-2) at 11. First Mercury agreed, *inter alia*, to fully indemnify the Bergstein entities for the judgment entered against them while the Bergstein entities agreed to release First Mercury from claims related to the Udy lawsuit and its judgment. *Id.* at 13-14. The Bergstein entities also assigned to First Mercury all rights and claims they may have against AAIC. *Id.* at 14-15.

---

[3] According to Counterclaimants, Pieter Bergstein closely held Standard and Zia as well as Bergstein. (Doc. 177) at 2.

B. *The Pleadings*

   1. *AAIC's First Amended Complaint for Declaratory Judgment, Bad Faith and Equitable Subrogation (Amended Complaint) (Doc. 4)*

AAIC contends in its Amended Complaint that

> [d]espite multiple opportunities to settle within the underlying $1 million policy limit plus First Mercury's $4 million excess policy limit, and despite the warnings of the likelihood of an excess verdict, Defendant First Mercury failed to settle the claims of the Udy Estate and the Udys within the policy limits of its Standard … Excess Policy.

(Doc. 4) at ¶ 17. As result of this alleged conduct, AAIC brings declaratory judgment, bad faith, and equitable subrogation claims against First Mercury. "AAIC seeks $1 million, which represents the amount of the AAIC Bergstein Policy that AAIC paid as a result of First Mercury's failure to settle the Udy Action within the limits of the AAIC Standard Policy and" the Standard Excess Policy. (Doc. 162) at 7.

   2. *The Counterclaims*

Counterclaimants contend that "AAIC did not disclose the Bergstein Policy to First Mercury, or, upon information and belief, to the Udys' counsel, or the defendants' counsel prior to trial." (Doc. 13) at 9, ¶ 18. Counterclaimants contend that AAIC did not offer to pay the policy limits under the Bergstein Policy until after the jury returned its verdict. *Id.* at ¶ 21. Counterclaimants further allege that "[b]ut for AAIC's failure to disclose and offer the $1 million limits under the Bergstein Policy, the Udy Action likely would have settled prior to trial within policy limits." *Id.* at 10, ¶ 25.

Counterclaimants contend in "Count I" that they are entitled to relief from AAIC under the doctrines of "equitable subrogation, equitable indemnity, and/or equitable contribution … because the a [sic] judgment against the insureds resulted from AAIC's concealment of the Bergstein Policy during the Udy Action." *Id.* at ¶¶ 27 and 28. Counterclaimants allege that

5

equitable relief is appropriate since they "paid disproportionately to protect AAIC's insureds in the Udy Action." *Id.* at ¶ 27.

Finally, in "Count II," Counterclaimants allege bad faith when AAIC breached its duty of good faith and fair dealing by

> a. failing to disclose the existence of the Bergstein Policy during the Udy Action;
> b. failing to offer the Bergstein Policy limits for settlement prior to the verdict in the Udy Action;
> c. abdicating its duty to pursue a settlement of the Udy Action prior to the verdict;
> d. failing to offer more than the limits of coverage to settle the Udy Action after the verdict;
> e. reserving rights under the Bergstein Policy and Standard Policy after judgment was entered in the Udy Action.

*Id.* at 11, ¶ 30. Counterclaimants seek punitive damages as well as compensatory damages under "Count II." *Id.* at ¶ 32.

C. *AAIC's Motion*

AAIC argues first that the counterclaims cannot apply to any damages assessed against Standard and Zia because they are not insureds under the Bergstein Policy and, thus, they could not have assigned any rights to First Mercury arising from that policy to pursue in the counter lawsuit. Second, AAIC argues that New Mexico case law does not allow Counterclaimants to recover punitive damages assessed against Standard and Zia. Third, and finally, AAIC argues that Counterclaimants cannot recover any damages assessed against Standard and Zia under the New Mexico Several Liability Act.[4]

AAIC, therefore, asserts that Counterclaimant's alleged damages cannot include "the $3,335,000 of compensatory damages and the $33,000,000 of punitive damages assessed against" Standard and Zia. (Doc. 175) at 9. Alternatively, AAIC asserts that because the total damages by Standard and Zia amount to 62.11% of all damages, Counterclaimants would be

---

[4] AAIC does not seek to dismiss the counterclaims as they relate to Bergstein's liability.

entitled to the "extra contractual" amount First Mercury paid, $33 million, minus the proportional amount of the damages caused by Standard and Zia, $20,496,300, which equals $12,503,700. *Id.* at 10. Counterclaimants oppose the Motion in its entirety.

*D. Standard of Review*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

*E. Discussion*

*1. Whether the Counterclaims Generally Apply to the Damages Assessed Against Standard and Zia*

AAIC notes that the counterclaims arise from the alleged fact that AAIC did not disclose and offer the $1 million limits under the Bergstein Policy prior to the entry of the Udy verdict. AAIC further notes that neither Standard nor Zia are insureds under the Bergstein Policy and so they could not have assigned any Bergstein Policy rights to First Mercury. AAIC contends that without the assignment of rights under the Bergstein Policy, the Counterclaimants cannot pursue counterclaims seeking to recoup any damages assessed against Standard and Zia.

The Court is not persuaded. Although the counterclaims center on the allegation that AAIC concealed the Bergstein Policy during the Udy lawsuit, Counterclaimants are seeking damages for the disproportionate amount of money that they paid on behalf of Standard, Zia, and Bergstein to settle this case, i.e., money Counterclaimants paid in excess of the limits of both Standard policies and the Bergstein Policy. Accordingly, it is irrelevant that Standard and Zia were not insureds under the Bergstein Policy when Counterclaimants seek damages for paying money in excess of the Standard Policies, under which Standard and Zia were insureds, as well as the Bergstein Policy.

*2. Whether Counterclaimants can Recover Punitive Damages Assessed Against Standard and Zia*

Because First Mercury now stands in the shoes of Standard and Zia, via the assignment of Standard and Zia's indemnification rights to First Mercury, AAIC contends that Counterclaimants cannot, as a matter of law, seek indemnification for punitive damages assessed against Standard and Zia. *See Inv. Co. of the Sw. v. Reese*, 1994-NMSC-051, ¶ 29, 117 N.M. 655 ("An assignee stands in the shoes of his assignor." (citation omitted)). AAIC cites *In re Consol. Vista Hills Retaining Wall Litig.* in which the New Mexico Supreme Court held that a party "may not seek indemnification for punitive damages assessed against it." 1995-NMSC-020, ¶ 45, 119 N.M. 542. The New Mexico Supreme Court reasoned that a party cannot benefit from indemnification for wrongful conduct. *Id.* ("Under both traditional and proportional indemnification a party is barred because of unclean hands from seeking indemnification for punitive damages….").

Counterclaimants, however, argue that *In re Consol. Vista Hills Retaining Wall Litig.* does not apply to this case. Counterclaimants correctly note that, unlike in *In re Consol. Vista Hills Retaining Wall Litig.*, neither they nor Standard and Zia are seeking direct indemnification

8

for punitive damages assessed against them. Instead, Counterclaimants specify that they are seeking indemnification from AAIC under the Standard Policy which contractually obligated Counterclaimants and AAIC to pay for punitive damages liability incurred by Standard and Zia. *See Baker v. Armstrong*, 1987-NMSC-101, ¶ 16, 106 N.M. 395 (stating "this Court joins the majority of jurisdictions which allow insurance contracts to cover liability for punitive damages"). In that situation, Counterclaimants do not benefit from underlying wrongful conduct that formed the basis for an award of punitive damages. Counterclaimants reiterate that the basis for their counterclaims rests on their contention they paid a disproportionate share of the settlement. Counterclaimants contend their disproportionate share includes punitive damages, due to AAIC's failure "to protect the interests of First Mercury's and AAIC's mutual insureds (Standard [and] Zia [])" by not disclosing and offering the $1 million limits under the Bergstein Policy prior to the entry of the Udy verdict. (Doc. 177) at 5.

The Court agrees with Counterclaimants. Because Counterclaimants are seeking indemnification under the Standard Policy's coverage for punitive damages, *In re Consol. Vista Hills Retaining Wall Litig.* does not prohibit Counterclaimants from seeking indemnification for money they paid to settle punitive damages judgments assessed against Standard and Zia. When insurance contracts cover punitive damages liability, as in this case, it is appropriate to seek such an indemnification. *Cf. Mid-Continent Cas. Co. v. I & W, Inc.*, 2015 WL 10818840, at *7 (D.N.M.) (declaring that insurance policies required insurer to indemnify insured for "damages as a result of the jury verdict, including punitive damages"). Thus, the fact that Counterclaimants are seeking to recover punitive damages assessed against Standard and Zia is not a basis for dismissing that part of the counterclaims.

9

*3. Whether the New Mexico Several Liability Act Bars the Counterclaims from Seeking Payment for Any Damages Assessed Against Standard and Zia*

AAIC argues that because Standard and Zia could not assign any rights to First Mercury with respect to the Bergstein Policy, the New Mexico Several Liability Act (Act) bars the counterclaims for any damages assessed against Standard and Zia. The Act establishes that tortfeasors are liable only for their own portion of the total fault, i.e., comparative liability, and that contribution is not available to a defendant who is severally liable. NMSA 1978, § 41-3A-1(B) and (E) (1996 Repl. Pamp.). AAIC contends that Counterclaimants' assertion that they "paid disproportionately to protect AAIC's insureds in the Udy Action" is contrary to the Act in that it seeks joint and several liability instead of comparative liability. *See* (Doc. 13) at 10, ¶ 27. AAIC explains that Counterclaimants want "to recover damages from AAIC for which AAIC was not liable as an insurer under the AAIC Bergstein Enterprises Policy," noting again that Standard and Zia could not assign any rights to First Mercury under the Bergstien Policy. (Doc. 175) at 9.

Counterclaimants contend that the Act's prohibition of contribution applies to indemnity among tortfeasors and not to insurance disputes. Notwithstanding whether the Act applies to insurance disputes, New Mexico recognizes *pro rata* apportionment of payment for loss based on the total insurance when two concurrent insurance policies "insure the same property, the same interest, and against the same risk." *Farmers Ins. Exch. v. Fed. Ins. Co.*, 2011 WL 13116736, at *9 (D.N.M.) (quoting *United Servs. Auto. Ass'n v. Agric. Ins. Co.*, 1960-NMSC-093, ¶ 9, 67 N.M. 333 (1960)). However, such an apportionment or equitable contribution between concurrent insurance policies does not apply to disputes between primary and excess insurers, like here. *Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*, 898 N.E.2d 216, 242 (Ill. App. Ct.

2008) ("Equitable contribution does not apply to primary/excess insurance issues because [primary and excess policies] cover different risk by their very definitions."). *See also Farmers Ins. Exch.*, 2011 WL 13116736, at *10 (recognizing that "a primary insurance policy insures against a different, greater risk than a true excess insurance policy does, as reflected by the difference in premium costs between the two types of insurance."); 1 *Practical Tools for Handling Insurance Cases* § 2:24 ("while two primary insurers or two excess insurers may have a right to equitable contribution against each other, generally no such right to equitable contribution will exist between a primary and an excess insurer because 'they are covering separate and clearly defined layers of risk.'" (citation omitted)). Under these principles, Counterclaimants cannot, as a matter of law, bring an equitable contribution counterclaim. That counterclaim, as raised in "Count I," therefore, is subject to summary judgment and dismissal.

Next, Counterclaimants note that their counterclaims are not limited to contribution or subrogation claims and that they also bring insurance bad faith and equitable indemnity counterclaims, which "transcend whether Standard E&S and Zia Transport were insureds under the Bergstein primary policy." (Doc. 177) at 6. As to the bad faith counterclaim, Counterclaimants note that "[w]hen an insurance company acts on behalf of the insured in the conduct of litigation and the settlement of claims, it assumes a fiduciary relationship." *Chavez v. Chenowith*, 1976-NMCA-076, ¶ 43, 89 N.M. 423. Counterclaimants assert that, because AAIC issued both the Standard Policy and the Bergstein Policy, it owed fiduciary duties to all of the defendants in the Udy case and breached those fiduciary duties by not disclosing the Bergstein Policy during pretrial settlement negotiations, which, according to Counterclaimants, adversely affected all of the Udy defendants' ability to engage in a global settlement. Consequently, Counterclaimants allege that this breach of fiduciary duties, i.e., bad faith, cost Standard and Zia,

11

and now Counterclaimants as assignees of Standard and Zia's rights, "millions of dollars in liability." (Doc. 177) at 7.

AAIC argues persuasively that it did not owe Standard and Zia a fiduciary duty under the Bergstein Policy because they were not named insureds under that policy. *See Azar v. Prudential Ins. Co. of America*, 2003-NMCA-062, ¶ 54, 133 N.M. 669 ("[A]n insurer assumes a fiduciary obligation toward an insured only in matters pertaining to the *performance* of obligations in the insurance contract."). Moreover, the Court observes that AAIC, as a primary insurer, cannot breach a duty of good faith owed directly to First Mercury, as an excess insurer. As this Court has held,

> There is no precedent in New Mexico for allowing [an excess insurer] to assert a cause of action against [a primary insurer] for breach of a duty running directly from [the primary insurer] to [the excess insurer]. Indeed, "the majority of courts in other jurisdictions ... similarly have determined that an excess insurer cannot assert a direct cause of action against a primary insurer that alleges the primary insurer owed the excess insurer [a] duty of good faith," or any other duty of care.

*Am. Guarantee & Liab. Ins. Co. v. Liberty Mut. Fire Ins. Co.*, 2014 WL 11514675, at *3 (D.N.M.) (citations omitted). Without a direct cause of action for their bad faith counterclaim, Counterclaimants can only bring a bad faith claim against AAIC under a subrogation theory[5] in which First Mercury steps into the shoes of Standard and Zia as insureds covered by the Standard Policy. *Cf* 16 *Couch on Ins*. § 223:73 (3d ed.) (stating that excess insurer can "subrogate to an insured's claim against a primary insurer for its bad-faith refusal to settle the underlying claim within policy limits….").

---

[5] In New Mexico, subrogation is an equitable remedy, no matter if it is called "equitable subrogation" or simply "subrogation." *Sunnyland Farms, Inc. v. Cent. New Mexico Elec. Co-op., Inc.*, 2013-NMSC-017, ¶ 53, 301 P.3d 387 ("Subrogation, whether created by contract or by operation of law, is an equitable remedy and equitable principles control its application." (citation omitted)).

"Subrogation encompasses the right of an insurance company, who has paid an insured's claim, to step into the shoes of its insured and pursue recovery from the party who is legally responsible for the insured's losses." *Sw. Steel Coil, Inc. v. Redwood Fire & Cas. Ins. Co.*, 2006-NMCA-151, ¶ 7, 140 N.M. 720. In other words, subrogation allows an insurer who compensated its insured to recoup, from the tortfeasor who harmed the insured, the money the insurer paid its insured. *Gulf Ins. Co. v. Cottone*, 2006-NMCA-150, ¶ 9, 140 N.M. 728 ("The most common instance of subrogation recognized by New Mexico law is that between an insurer and its insured, allowing the insurer to recover payments against the person who caused the loss."). "A right of subrogation also exists if an insurance company pays a claim that should have been paid by another insurer." *Sw. Steel Coil, Inc.*, 2006-NMCA-151 at ¶ 7. Under such circumstances, "[t]he remedy [of subrogation] is for the benefit of one secondarily liable who has paid the debt of another." *State Farm Mut. Auto. Ins. Co. v. Found. Res. Ins. Co., Inc.*, 1967-NMSC-197, ¶ 24, 78 N.M. 359. In *State Farm Mut. Auto. Ins. Co.*, the New Mexico Supreme Court held that the plaintiff insurer, who had paid the *entire* loss stemming from an automobile accident, was entitled to exercise its equitable subrogation rights against the defendant insurer for reimbursement of payments made after the defendant insurer wrongfully denied coverage. *Id.* at ¶¶ 38-39. Significantly, the New Mexico Supreme Court "recognize[s] that '[t]he person asserting the right to subrogation must be without fault.'" *Sunnyland Farms, Inc.*, 2013-NMSC-017 at ¶ 54 (citation omitted).

Here, AAIC is not a tortfeasor who injured Standard and Zia. Additionally, Counterclaimants did not pay the entire loss stemming from the Udy accident. To the contrary, with respect to Standard and Zia, AAIC paid its limits under the Standard Policy.

Counterclaimants, thus, are not seeking reimbursement for a claim that should have been paid by AAIC.

Furthermore, First Mercury was not without fault. It is undisputed that prior to the entry of the verdict First Mercury, as the lead negotiator, failed to offer to pay its portion of the Udy plaintiffs' settlement counteroffer ($2.5 million) under the Standard Excess Policy, which First Mercury could have done within its $4 million limit, even without the Bergstein Policy. First Mercury cannot be characterized as an innocent bystander. Because First Mercury was not without fault and subrogation principles otherwise do not apply to this situation, Counterclaimants do not have subrogation rights under the Standard Policy, the only policy at play with respect to Standard and Zia. Without those subrogation rights, Counterclaimants cannot bring the insurance bad faith counterclaim. For the aforementioned reasons, the equitable subrogation and insurance bad faith counterclaims are both subject to summary judgment as a matter of law.

Nevertheless, Counterclaimants note that they can still recover under the equitable indemnity theory. AAIC again argues that under the New Mexico Several Liability Act the indemnity theory fails because Standard and Zia could not assign to First Mercury any rights under the Bergstein Policy, which AAIC asserts is the basis for the counterclaims. The Court observes first that the New Mexico Supreme Court has made clear that equitable or traditional indemnification can co-exist with both comparative negligence and several liability. *Safeway, Inc. v. Rooter 2000 Plumbing & Drain SSS*, 2016-NMSC-009, ¶ 33, 368 P.3d 389 (reiterating "that traditional indemnity survives and co-exists with comparative negligence, several liability, and proportional indemnification in New Mexico because it 'addresses other considerations of contractual right or of restitution to which a passive wrongdoer is entitled.'" (citation omitted)).

14

Second, an insurer can bring an equitable indemnification claim in its own right without the need for subrogation or assignment of rights. *See Gen. Star Indem. Co. v. Travelers Indem. Co.*, 2013 WL 1849285, at *17–18 (Conn. Super. Ct.) ("Indemnification is distinguishable from subrogation in that the person seeking indemnification does so in his or her own right, while in the latter the subrogee succeeds to another's right to payment." (quoting L. Russ & T. Segalla, 15 *Couch on Insurance 3d* (2005) § 217:5)). AAIC's arguments regarding equitable indemnity, therefore, lack merit. Hence, AAIC has not carried its summary judgment burden of demonstrating that the equitable indemnification counterclaim should be dismissed as a matter of law.[6]

*F. Conclusion*

The Court determines that Counterclaimants' equitable indemnification counterclaim based on the compensatory and punitive damages assessed against Standard and Zia survive this motion for summary judgment. The other counterclaims based on damages assessed against Standard and Zia are subject to summary judgment and will be dismissed with prejudice.

IT IS ORDERED that

1. "American Automobile Insurance Company's Opposed Motion for Judgment on the Pleadings as to First Mercury's Counterclaim or for Partial Summary Judgment as to First Mercury's Counterclaim" (Doc. 175) is granted in part;

---

[6] The Court notes that the parties do not discuss the actual applicability of equitable or traditional indemnification to the facts of this case. *See Safeway, Inc.*, 2016-NMSC-009, ¶¶ 27-29 (discussing equitable indemnification); *Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 2011-NMCA-112, ¶ 14, 267 P.3d 70 (same); *New Mexico Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶¶ 24-31, 145 N.M. 316 (same); *In re Consol. Vista Hills Retaining Wall Litig.*, 1995-NMSC-020 at ¶¶ 7-13 (same). Without argument by counsel on that issue, the Court declines, at this time, to *sua sponte* analyze and determine if equitable indemnification applies here.

2. except for the equitable indemnification counterclaim based on damages assessed against Standard and Zia, summary judgment will be entered in favor of AAIC as to the remaining counterclaims based on damages assessed against Standard and Zia; and

3. those counterclaims will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE