IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMERICAN AUTOMOBILE INSURANCE
COMPANY,

    Plaintiff/Counterdefendant,

v.                                                                Civ. No. 13-439 KG/LF

FIRST MERCURY INSURANCE COMPANY,

    Defendant/Counterclaimant,

and

XL INSURANCE COMPANY LIMITED and
HCC INTERNATIONAL INSURANCE COMPANY PLC,

    Joined Plaintiffs on Counterclaim.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon "American Automobile Insurance Company's Motion for Summary Judgment as to First Mercury's Counterclaim for Equitable Indemnity" (Motion for Summary Judgment), filed July 13, 2018. (Doc. 200). Defendant/Counterclaimant First Mercury Insurance Company (First Mercury) filed a response on August 7, 2018,[1] and Plaintiff/Counterdefendant American Automobile Insurance Company (AAIC) filed a reply on September 10, 2018. (Docs. 205 and 208). Having considered the Motion for Summary Judgment, the accompanying briefing, and the undisputed material facts, the Court grants the Motion for Summary Judgment.

---

[1] "Joined Plaintiffs on Counterclaims," XL Insurance Company Limited and HCC International Insurance Company PLC, join in First Mercury's response. (Doc. 205) at 1 fn. 1.

*A. Summary of Material Facts*[2]

This case involves an insurance dispute arising from a traffic accident in which Monte Lyons, a Standard E&S, LLC (Standard) truck driver, caused the death of Kevin Udy. (Doc. 162) at 2. Lyons was driving a truck and trailer leased to Standard from Zia Transport, Inc. (Zia). *Id.* Bergstein Enterprises, Ltd. (Bergstein) operated both Standard and Zia. *Id.*

*1. The Insurance Policies*

Standard had an AAIC insurance policy (Standard Policy) which included Lyons, Zia, and Bergstein as additional insureds under its omnibus clause. (Doc. 4) at ¶ 7. That insurance policy had "primary liability coverage up to $1 million" per accident. (Doc. 162) at 3. This policy also covered punitive damages.[3]

In addition to the Standard Policy, Standard had an excess insurance policy (Standard Excess Policy) issued by First Mercury with a policy limit of $4 million. *Id.* at 5. The Standard Policy served as the underlying policy for the Standard Excess Policy. *Id.*

AAIC also issued Bergstein an insurance policy (Bergstein Policy) with a $1 million policy limit. *Id.*

*2. The Underlying State Lawsuit*

In March 2011, the Estate of Kevin Udy and Udy family members (collectively, the Udys) sued Standard, Zia, Bergstein, and Lyons in state court for wrongful death, loss of consortium, personal injury, and punitive damages. (Doc. 117-1). AAIC provided a defense to

---

[2] Unless otherwise noted, this Summary of Material Facts is undisputed.

[3] Counterclaimants contend that the Standard "policy did not contain a punitive damages exclusion." (Doc. 177) at 5. AAIC does not contest that contention. *See* (Doc. 178) at 5.

all four defendants in that case while "First Mercury took the lead in settlement negotiations with the Udy plaintiffs." (Doc. 4) at ¶ 15; (Doc. 162) at 6.

During the pretrial settlement negotiations, First Mercury offered $2,250,000 to settle the case. (Doc. 116-3) at 22. First Mercury specifically offered the $1 million policy limit under the AAIC Standard Policy and then, presumably, offered $1,250,000 under its Standard Excess Policy. (Doc. 162) at 6. No funds from the Bergstein Policy were offered during the pretrial settlement negotiations. *Id.* In fact, First Mercury contends that it did not know about the Bergstein Policy at that time. (Doc. 13) at 9, ¶ 18.

The Udys countered by offering to settle the case for $3.5 million, well within the limits of the combined Standard Policy and the Standard Excess Policy. (Doc. 116-3) at 20-23. First Mercury apparently did not respond to that counteroffer, so the Udys withdrew the counteroffer and terminated settlement negotiations. *Id.* at 22-23.

In March 2013, the case was tried before a jury and "judgment was entered against Standard, Zia, and Bergstein for a total of $58 million…." (Doc. 162) at 7. The case subsequently settled for $43 million, which was paid as follows: $1 million under the Standard Policy; $4 million under the Standard Excess Policy; $1 million under the Bergstein Policy; $4 million under an excess policy to the Bergstein Policy, which is not at issue here; and $33 million by First Mercury and its liability insurers. *Id.*

*3. This Lawsuit*

AAIC filed this lawsuit against First Mercury and others in May 2013 and filed a first amended complaint in July 2013. (Docs. 1 and 4). In October 2013, First Mercury filed counterclaims against AAIC. (Doc. 13). In February 2014, Standard, Zia, Bergstein, and Pieter

Bergstein[4] assigned to First Mercury all rights and claims they may have against AAIC. (Doc. 175-2) at 14-15.

AAIC alleges in its first amended complaint that

[d]espite multiple opportunities to settle within the underlying $1 million policy limit plus First Mercury's $4 million excess policy limit, and despite the warnings of the likelihood of an excess verdict, Defendant First Mercury failed to settle the claims of the Udy Estate and the Udys within the policy limits of its Standard … Excess Policy.

(Doc. 4) at ¶ 17. As result of this alleged conduct, AAIC brings declaratory judgment, bad faith, and equitable subrogation claims against First Mercury.

In response to the first amended complaint, First Mercury contends that "AAIC did not disclose the Bergstein Policy to First Mercury, or, upon information and belief, to the Udys' counsel, or the defendants' counsel prior to trial." (Doc. 13) at 9, ¶ 18. First Mercury further contends that AAIC did not offer to pay the policy limits under the Bergstein Policy until after the jury returned its verdict. *Id.* at ¶ 21. First Mercury alleges that "[b]ut for AAIC's failure to disclose and offer the $1 million limits under the Bergstein Policy, the Udy Action likely would have settled prior to trial within policy limits." *Id.* at 10, ¶ 25.

Relevant to this Motion for Summary Judgment, First Mercury asserts in "Count I" an equitable indemnification counterclaim against AAIC, "because the a [sic] judgment against the insureds resulted from AAIC's concealment of the Bergstein Policy during the Udy Action." *Id.* at ¶¶ 27 and 28. First Mercury alleges that equitable relief is appropriate since it "paid disproportionately to protect AAIC's insureds in the Udy Action." *Id.* at ¶ 27. In addition to the equitable indemnification counterclaim, First Mercury brought other counterclaims against AAIC based on the above allegations.

---

[4] Pieter Bergstein closely held Standard, Zia, and Bergstein. (Doc. 177) at 2.

*4. The April 19, 2018, Memorandum Opinion and Order (Doc. 184)*

On April 19, 2018, the Court granted, in part, "American Automobile Insurance Company's Opposed Motion for Judgment on the Pleadings as to First Mercury's Counterclaim or for Partial Summary Judgment as to First Mercury's Counterclaim" (Doc. 175). Memorandum Opinion and Order (Doc. 184). Except for the equitable indemnification counterclaim based on damages assessed against Standard and Zia, the Court entered summary judgment in favor of AAIC as to the other counterclaims also based on damages assessed against Standard and Zia. (Doc. 185).

Among other things, the Court concluded in its Memorandum Opinion and Order that AAIC did not carry "its summary judgment burden of demonstrating that the equitable indemnification counterclaim should be dismissed as a matter of law" as to damages assessed against Standard and Zia. (Doc. 184) at 15. The Court further noted the parties had not discussed whether equitable indemnification applies to the facts of this case. *Id.* n. 6. Consequently, the Court declined, at that time, "to *sua sponte* analyze and determine if equitable indemnification applies here." *Id.* The Court subsequently allowed AAIC to file this Motion for Summary Judgment to address the issue of whether equitable indemnification applies to the factual situation in this case as it relates to damages assessed against Standard and Zia. (Doc. 197).

*B. The Motion for Summary Judgment*

AAIC contends that it is entitled to summary judgment on the equitable indemnification counterclaim based on damages assessed against Standard and Zia for two reasons. First, AAIC argues that equitable indemnification cannot apply because First Mercury, itself, engaged in wrongful conduct during the pretrial settlement negotiations. Second, AAIC asserts that it did

not directly harm the Udys, a requirement for equitable indemnification. First Mercury opposes the Motion for Summary Judgment arguing that both traditional and proportional equitable indemnification, two specific kinds of equitable indemnification, apply to the damages assessed against Standard and Zia.

*C. Standard of Review*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)*.* The Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

*D. Discussion*

Pertinent to this case, "actions for equitable indemnification based on the indemnitor's derivative liability to the indemnitee are allowed in New Mexico in certain situations." *New Mexico Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 22, 145 N.M. 316. Specifically, New Mexico recognizes two derivative liability theories of equitable indemnification: traditional indemnification and proportional indemnification. *Id.* at ¶ 23 (citations omitted).

> Traditional indemnification grants the person who has been held liable for another's wrongdoing an all-or-nothing right of recovery from a third party, such as the primary wrongdoer. When applicable, proportional indemnification allows a defendant to seek partial recovery from another for his or her fault.

*Id.* (citations omitted).

Under either traditional or proportional indemnification, "the indemnitor must be at least partly liable to the *original plaintiff* for his or her injuries." *Id.* at ¶ 28 (emphasis added). "A properly pled indemnity claim must allege that the defendant [or indemnitor] caused some *direct harm* to a third party and that the plaintiff or [indemnitee] discharged the resulting liability from this harm." *Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 2011-NMCA-112, ¶ 14, 267 P.3d 70 (quoting *Gallagher*, 2008-NMSC-067 at ¶ 30 (citation omitted)). Without the requirement that the indemnitor is at least party liable to the injured party or directly harmed the injured party, the courts "would unnecessarily blur the distinction between direct causes of action for negligence and derivative claims for indemnification." *Gallagher*, 2008-NMSC-067 at ¶ 28. Since this liability or direct harm requirement must be met in order for any equitable indemnification counterclaim to survive summary judgment, whether premised on traditional or proportional indemnification, the Court addresses that potentially dispositive requirement first.

AAIC notes that, as the proposed indemnitor, it was not liable for the injuries suffered by the Udys, the original plaintiffs in the underlying lawsuit, nor did it directly harm the Udys. Consequently, AAIC concludes that the equitable indemnification counterclaim based on damages assessed against Standard and Zia fails as a matter of law. First Mercury, on the other hand, argues that AAIC, as the proposed indemnitor, directly harmed its insureds, Standard and Zia, original defendants in the underlying lawsuit, by breaching its duty to conduct good faith settlement negotiations prior to the Udy trial. Thus, First Mercury contends that it has

established, as a matter of law, an equitable indemnification counterclaim based on the damages assessed against Standard and Zia.

The Court agrees with AAIC. The New Mexico Supreme Court in *Gallagher* explained the doctrine of equitable indemnification and described when equitable indemnification is not warranted. In *Gallagher*, the New Mexico Public School Insurance Authority (Authority) provided risk-related insurance to the Moriarty Municipal Schools (Moriarty). 2008-NMSC-067 at ¶ 2. Moriarty subsequently discovered an employee had embezzled money from the school district. *Id.* at ¶ 4. Moriarty sued the Authority, via arbitration, to recover the embezzlement losses under the Authority's insurance policy. *Id.* The arbitrator found in favor of Moriarty and required the Authority to pay Moriarty for the embezzlement losses. *Id.* at ¶ 5. The Authority then sued Gallagher, who wrote and brokered the underlying insurance policy, for professional negligence and to seek reimbursement for the entire amount the Authority paid Moriarty for its embezzlement losses. *Id.* at ¶¶ 3 and 6.

The New Mexico Supreme Court found that the indemnitor, Gallagher, did not cause Moriarty, the original plaintiff in the underlying lawsuit, any injury, and that, instead, the "criminal acts of its employee when she embezzled funds from the school district" caused Moriarty's injury.[5] *Id.* at ¶ 31. The New Mexico Supreme Court then concluded that "because the Authority's injury was directly caused by Gallagher's alleged [professional negligence] and because Gallagher did not directly harm Moriarty, an equitable indemnity claim is inappropriate." *Id.*

---

[5] In fact, Gallagher benefitted Moriarty by providing more coverage under the erroneously drafted insurance policy than Moriarty would have, otherwise, been entitled to. *Id.* at ¶ 26.

In deciding *Gallagher*, the New Mexico Supreme Court cited and quoted with approval *Canal Ins. Co. v. Lebanon Ins. Agency, Inc.*, 504 F. Supp. 2d 113 (W.D. Va. 2007). In that case, "Roger Baldwin, an employee of Jim Rowe Trucking, was injured in a motor vehicle accident in the course of his employment." *Id.* at 116. Baldwin made a claim against Jim Rowe Trucking's insurer, Canal Insurance Company (Canal). *Id.* Canal settled the claim with Baldwin. *Id.* Canal then sued Lebanon Insurance Agency, Inc. (Lebanon) for negligently failing to obtain the policyholder's signature and sought equitable indemnification from Lebanon for the settlement amount it paid Baldwin. *Id.*

The *Canal* court explained that

> [a]n indemnity claim does not seek recovery for any direct harm caused by the [indemnitor] to the [indemnitee]-it is clearly distinct from a direct cause of action. Rather, an indemnity action is derivative of an underlying claim filed by a third party for which the [indemnitee] was held responsible.

*Id.* at 117. The court further stated that "a properly pled indemnity claim must allege that the [indemnitor] caused some direct harm to a third party and that the [indemnitee] discharged the resulting liability from this harm." *Id.* (quoted in *Gallagher*, 2008-NMSC-067 at ¶ 30). The court then noted that "[t]he injury sustained by the third party, Baldwin, [the original plaintiff,] resulted from a motor vehicle accident, and not from any act or omission of Lebanon Insurance [,the proposed indemnitor]." *Id.* The court determined that Canal, instead, "alleged facts that amount to a direct claim of negligence against [Lebanon] and not a derivative claim for equitable indemnification." *Id.*

Similar to *Gallagher* and *Canal*, AAIC, the purported indemnitor here, did not directly, or otherwise, cause the Udys, the original plaintiffs, any injury. Thus, First Mercury's equitable indemnification counterclaim against AAIC does not derive from the Udys' claims in the underlying lawsuit. Rather, like in *Gallagher* and *Canal*, First Mercury alleges a direct claim of

9

negligence against AAIC in the guise of an equitable indemnification counterclaim. Consequently, First Mercury has not established an equitable indemnification counterclaim based on the damages assessed against Standard and Zia.

This conclusion is also supported by *Budget Rent-a-Car Sys., Inc. v. Bridgestone*, 2009-NMCA-013, 145 N.M. 623. In that case, the plaintiffs were injured when the Budget Rent-a-Car Sys., Inc. (Budget) rental vehicle they were driving experienced a tire blow out. 2009-NMCA-013 at ¶ 2. The plaintiffs sued Budget for damages they suffered as a result of the tire blow out. *Id.* at ¶ 3. Budget settled with the original plaintiffs and sued Bridgestone for reimbursement of the settlement amount. *Id.* at ¶ 4. The indemnitee, Budget, alleged that the indemnitor, Bridgestone, manufactured a defective tire which caused the vehicle accident injuring the original plaintiffs. *Id.* at ¶ 5. Consistent with *Gallagher* and *Canal,* the New Mexico Court of Appeals recognized an equitable indemnification claim because Bridgestone's alleged actions, if true, would have directly harmed the original plaintiffs and caused Bridgestone to be liable to them for their injuries. *Id.* at ¶ 20. *See also* 41 Am. Jur. 2d *Indemnity* § 20 ("In order for the doctrine of equitable indemnity to apply, there must be some basis for tort liability against the proposed indemnitor, which generally is based on a duty owed to the *underlying plaintiff* …." (emphasis added)).

In sum, it is undisputed that AAIC, as the proposed indemnitor, did not directly harm the Udys nor was AAIC somehow liable to the Udys for the injuries they suffered as a result of the accident that caused Kevin Udy's death. For that reason, First Mercury's counterclaim for equitable indemnification based on the damages assessed against Standard and Zia fails as a matter of law.

Even if First Mercury could show that AAIC directly harmed the Udys in some way or was liable to them, First Mercury's proportional indemnification counterclaim against AAIC fails as well. In New Mexico, proportional indemnification "allows defendants [or indemnitees] to recover from a third-party [or indemnitor] for the portion of a[n original] plaintiff's loss which the third-party's [or indemnitor's] conduct caused, even when the law does not apportion fault amongst *tortfeasors* under a theory of comparative fault" or contribution. *Safeway, Inc. v. Rooter 2000 Plumbing & Drain SSS*, 2016-NMSC-009, ¶ 26, 368 P.3d 389 (emphasis added). In other words, proportional indemnification is unavailable in the tort context, but is available when the original "plaintiff chooses to sue under breach of contract" and the defendant, as an indemnitee, seeks "'indemnification for that percentage of fault attributable to' another," i.e., an indemnitor. *Id.* at ¶ 25 (citation omitted). *See also Flowers v. Lea Power Partners, LLC*, 2012 WL 2922689 *6 (D.N.M.) (finding that in New Mexico "proportional indemnification does not apply to tort cases"). Here, the Udys did not assert any breach of contract claims, only tort claims. Applying the above case law to this situation, First Mercury cannot, as a matter of law, bring a proportional indemnification counterclaim against AAIC for damages assessed against Standard and Zia.

*E. Conclusion*

The Court grants the Motion for Summary Judgment for two reasons. First, it is undisputed that AAIC, the proposed indemnitor, did not harm the Udys, the original plaintiffs in the underlying action. Hence, First Mercury failed to show, as a matter of law, that equitable indemnification, whether considered traditional or proportional, applies with respect to the damages assessed against Standard and Zia. Second, to the extent First Mercury seeks proportional indemnification, proportional indemnification does not apply in this situation, as a

matter of law, because it is undisputed that the Udys did not bring any breach of contract claims in the underlying lawsuit.

IT IS ORDERED that

1. American Automobile Insurance Company's Motion for Summary Judgment as to First Mercury's Counterclaim for Equitable Indemnity (Doc. 200) is granted;

2. summary judgment will be entered in favor of AAIC on the equitable indemnification counterclaim based on damages assessed against Standard and Zia; and

3. that counterclaim will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE